BILTMORE SQUARE ASSOCIATES, a North Carolina Joint Venture, DeBARTOLO ASHEVILLE ASSOCIATES, an Ohio General Partnership, SEVEN SEAS PARTNERSHIP, a North Carolina General Partnership, CROWN AMERICAN CORPORATION, a Pennsylvania Corporation, HESS'S DEPARTMENT STORES, INC., a Pennsylvania Corporation, PROFFITT'S, INC., a Tennessee Corporation, RAY BRIDGES and wife, DEBORAH BRIDGES, WESLEY ANGEL and wife, GWENDA ANGEL, BRENT WILLIAMSON, PAUL MARTIN JONES and wife, MARY SUE JONES, Petitioners v. CITY OF ASHEVILLE, a Municipal Corporation, Respondent

No. 9228SC814

(Filed 1 February 1994)

1. **Municipal Corporations § 117 (NCI4th) — annexation proceeding allegedly violating Voting Rights Act — no standing of petitioners to challenge**

   The trial court did not err in concluding that petitioners did not have standing to challenge an annexation proceeding as violating the Voting Rights Act, since petitioners failed to show that they were asserting their own legal rights and interests and not those of third parties, as they stipulated that none of them were members of a racial or ethnic minority and that none of them were registered to vote within the City of Asheville.

   **Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 70 et seq.**

Capacity to attack the fixing or extension of municipal limits or boundary. 13 ALR2d 1279.

2. **Municipal Corporations § 61 (NCI4th)— annexation area— standards of subdivision test met—cut off date for calculating percentages—date of public hearing, not adoption of ordinance**

The trial court did not err in concluding that an annexation area met the standards of the subdivision test set forth in N.C.G.S. § 160A-48(c)(3), since throughout the annexation process, the percentages for the subdivision tests changed to reflect updated findings, changes in tax records, and changes in the character of the property; the court properly found that the termination date for calculation of the subdivision test percentage could be no later than the date of the public hearing; figures which existed then showed compliance with the statute; and there was no merit to petitioners' contention that the time of adoption of the annexation ordinance should be the controlling time.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 66 et seq.**

Appeal by petitioners from judgment entered 10 March 1992 by Judge Robert W. Kirby in Buncombe County Superior Court. Heard in the Court of Appeals 16 June 1993.

*Adams Hendon Carson Crow & Saenger, P.A., by S. J. Crow and Martin Reidinger, for petitioner appellants.*

*Nesbitt & Slawter, by William F. Slawter; and Assistant City Attorney Sarah Patterson Brison, for respondent appellee.*

COZORT, Judge.

On 4 June 1991, the Asheville City Council adopted Ordinance No. 1911 which annexed a certain area of land southwest of the City. On 3 July 1991, petitioners filed a petition for judicial review of the annexation ordinance, alleging, in pertinent part that (1) petitioners are owners of real property located in the annexation area; (2) all annexation proceedings are invalid and that Ordinance 1911 is void because incorporation of the annexation area violates the Voting Rights Act of 1965; (3) the City failed to meet the requirements of N.C. Gen. Stat. §§ 160A-47, 160A-48, and 160A-49 (1987); (4) the ordinance was not adopted in accordance with pro-

cedures of the City Council; (5) petitioners were not given proper notice and were deprived of due process of law; and (6) the annexation statutes as applied deprived petitioners of due process of law, equal protection, and benefits of law of the land. Petitioners asked the court to declare that the ordinance was void and that the area purported to be annexed was not eligible for annexation. They also requested a remand for proceedings in accordance with annexation statutes, costs of the action, and other relief.

On 10 March 1992, Superior Court Judge Robert W. Kirby found, in pertinent part:

### Voting Rights Act

3. Petitioners in this matter include two general partnerships involved in a joint venture, with one of the partnerships being an Ohio General Partnership; a Pennsylvania corporation; a Tennessee corporation; and seven individual petitioners. All of the individual petitioners are white. None of the individual petitioners were registered to vote within the City of Asheville at the time of this annexation.

* * * *

### Subdivision Test

* * * *

11. Respondent performed calculations for the subdivision test prior to approval by the Asheville City Council of the report setting forth plans to provide for extension of major municipal services to the Annexation Area (the "Plan"). The Plan was approved on March 19, 1991.

12. The Plan approved on March 19, 1991, included a statement showing that the Annexation Area is developed for urban purposes as defined in N.C. Gen. Stat. sec. 160A-48 (c) (3). The Plan showed that of the 363.90 acres of land in the Annexation Area not used for commercial, industrial, governmental or institutional purposes, 262.25 acres, or 72.07%, are divided into lots and tracts of five acres or less.

13. Property owners in the Annexation Area caused changes to be made to the Buncombe County tax maps and records after the Plan was adopted on March 19, 1991, but before City of Asheville Ordinance No. 1911 ("Annexation Or-

dinance") was adopted on June 4, 1991. The parties stipulated that those changes were made on May 6 and 7, 1991.

\* \* \* \*

16. The public hearing on the Annexation Area was held on April 23, 1991.

17. The Annexation Ordinance was adopted on three readings — May 7, 1991; May 21, 1991; and June 4, 1991. The effective date of the annexation, as established by the Annexation Ordinance, was July 31, 1991. The effective date of the annexation was stayed, however, by the filing of a petition in this matter on July 3, 1991.

18. Respondent made changes to the boundaries of the Annexation Area by deleting some lots and tracts at the southern end of the area described in the resolution of intent after the approval of the Plan and before the adoption of the Annexation Ordinance. Those changes were reflected in the second paragraph of subsection (2) of the "Statement of Statutory Standards" found on pages 1 and 2 of the Amendment to the Plan for Extension of Major Municipal Services approved on June 4, 1991 ("Amended Plan"). In addition, Respondent showed the addition of one lot within the Annexation Area which was inadvertently omitted from calculations made prior to adoption of the Plan.

19. At the trial of this matter, Respondent conceded that it had made an 18.0 acre error in its subdivision test calculations. As a result of that error the subdivision test calculation in paragraph 2 of subsection (2) of the "Statement of Statutory Standards" should be changed to show that of the 360.45 acres of land in the Annexation Area not used for commercial, industrial, governmental or institutional purposes, 240.80 acres, or 66.81%, are divided into lots and tracts of five acres or less.

20. The General Assembly has determined that certain steps must be taken in the annexation process and those procedural steps require that there be a cutoff date for determining what changes had been made to lots and tracts for the purposes of the subdivision test in N.C. Gen. Stat. sec. 160A-48 (c) (3). That date can be no later than the date of the public hearing, at which time the public has

ample opportunity to provide cities in North Carolina with information as to incorrect use or size determinations for the purposes of that test.

21. Respondent's calculations of the subdivision test as set forth in paragraph 2, with the revision for the 18 acre error, are the calculations to be used as of the "time of annexation."

22. At the time of annexation, therefore, the Annexation Area was subdivided into lots and tracts such that 68.81% of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consisted of lots and tracts five acres or less in size.

23. Respondent included in paragraphs 3 and 4 of subsection (2) of the "Statement of Statutory Standards" calculations which would result if one did take into consideration actions taken by various property owners within the Annexation Area following adoption of the Plan (and after the public hearing), by which they caused changes to be made to the size and number of lots shown on the Buncombe County tax maps and records. Respondent also included in paragraph 4 changes in use to an 18.0 acre tract and a 6.1 acre tract which occurred following the approval of the Plan.

Based upon the findings of fact, the trial court concluded in part:

2. This Court does not have jurisdiction in this proceeding to determine whether or not this annexation results in a violation of the Voting Rights Act of 1965, as amended.

3. Even if this Court had such jurisdiction, Petitioners herein do not have standing in this proceeding to challenge this annexation as violating the Voting Rights Act of 1965, as amended.

4. Even if this Court had such jurisdiction and Petitioners had such standing, Petitioners have failed to show that this annexation violates the Voting Rights Act of 1965, as amended.

5. The Annexation Area complies with the provisions of *N.C. Gen. Stat.* sec. 160A-48 (c) (3) in that it was subdivided

into lots or tracts such that at least 60% of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size.

6. The Annexation Area substantially complies with the coincidence requirements of *N.C. Gen. Stat.* sec. 160A-48 (b) (2).

The trial court affirmed the annexation ordinance. Petitioners appeal.

On appeal, petitioners argue that the trial court erred in (1) finding and concluding that Ordinance 1911 did not violate the Voting Rights Act; (2) concluding that it did not have jurisdiction to decide a challenge to the ordinance based on the Voting Rights Act; (3) concluding that petitioners did not have standing to challenge the ordinance based on a violation of the Voting Rights Act; and (4) finding and concluding that the annexation area met the requirements of N.C. Gen. Stat. § 160A-48(c)(3).

**[1]** We first consider whether petitioners have standing to challenge the annexation on the basis that the ordinance violated the Voting Rights Act. Section 2 of the Voting Rights Act of 1965, 42 U.S.C. 1973(a) (Cum. Supp. 1993), provides in part that

No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . .

Our research revealed no North Carolina cases addressing the requirement of standing to challenge an ordinance on the basis of the Voting Rights Act. "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations of issues . . . .' " *Stanley v. Dept. Conserv. & Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 20 L.Ed. 2d 947, 961 (1968) ). We turn to federal cases for further guidance. To establish standing under the Voting Rights Act, petitioner must show:

BILTMORE SQUARE ASSOC. v. CITY OF ASHEVILLE

[113 N.C. App. 459 (1994)]

(1) he has personally suffered or will suffer some distinct injury-in-fact as a result of defendant's putatively illegal conduct; (2) the injury can be traced with some degree of causal certainty to defendant's conduct; (3) the injury is likely to be redressed by the requested relief; (4) the plaintiff must assert his own legal rights and interests, not those of a third party; (5) the injury must consist of more than a generalized grievance that is shared by many; and (6) the plaintiff's complaint must fall within the zone of interests to be regulated or protected by the rule of law in question.

*Newman v. Voinovich*, 789 F. Supp. 1410, 1415 (S.D. Ohio 1992) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471-77, 70 L.Ed. 2d 700, 709 (1982)), *aff'd*, 986 F.2d 159 (6th Cir. 1993), *cert. denied*, --- U.S. ---, 125 L.Ed. 2d 727 (1993). Petitioners alleged that the annexation in violation of the Voting Rights Act "could dilute the minority voting strength within the existing City boundary and that therefor the citizens of this annexation area . . . could be deprived of the full benefit of their rights as citizens of the City of Asheville if annexed . . . ." We find that petitioners have failed to show that they were asserting their own legal rights and interests and not those of third parties. The parties stipulated that none of the petitioners is a member of a racial or ethnic minority and that none of the petitioners were registered to vote within the City of Asheville. The annexation does not deny or abridge the right to vote on account of petitioners' race or color. Accordingly, we find that the trial court did not err in concluding that the petitioners did not have standing to challenge the annexation proceeding as violating the Voting Rights Act. We need not address petitioners' remaining arguments based upon a violation of the Voting Rights Act.

[2] We next consider petitioners' argument that the trial court erred in concluding that the annexation area met the standards of the subdivision test set forth in N.C. Gen. Stat. § 160A-48(c)(3) (1987). The parties stipulated that the use test required by N.C. Gen. Stat. § 160A-48(c)(3) has been met. N.C. Gen. Stat. § 160A-48 provides in part:

(a) A municipal governing board may extend the municipal corporate limits to include any area

(1) Which meets the general standards of subsection (b), and

(2) Every part of which meets the requirements of either subsection (c) or subsection (d).

\* \* \* \*

(c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which meets any one of the following standards:

\* \* \* \*

(3) Is so developed that at least sixty percent (60%) of the total number of lots and tracts in the area at the time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty percent (60%) of the total acreage, not counting the acreage used at *the time of annexation* for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size. (Emphasis added.)

N.C. Gen. Stat. § 160A-49(e)(1) requires an ordinance to contain specific findings that the area to be annexed meets the requirements of N.C. Gen. Stat. § 160A-48. Throughout the annexation process, the percentages for the subdivision tests changed to reflect updated findings, changes in tax records, and changes in the character of property. As a result, Ordinance No. 1911 contains four different paragraphs concerning the subdivision test with each paragraph showing calculations based upon different data. The Ordinance states that all four paragraphs reflect numbers above the threshold sixty percent. At trial, however, the City conceded that an eighteen-acre error had been made which changed the subdivision test percentages. Although percentages set forth in the first, second, and fourth paragraphs remained above sixty percent, the percentage in the third paragraph did not. The trial court found that the termination date for calculation of the subdivision test percentage could be no later than the date of the public hearing. Accordingly, the trial court found that the second paragraph satisfied the requirements of N.C. Gen. Stat. § 160A-48(c)(3).

IN RE ESTATE OF ARMFIELD

[113 N.C. App. 467 (1994)]

Petitioners argue on appeal that the annexation was improper because the trial court erred in relying upon the calculations in the second paragraph reflecting the subdivision test percentage *four months before the adoption of the ordinance.* Petitioners argue that the trial court misinterpreted the phrase "time of annexation." The phrase, petitioners contend, means the time of the adoption of the annexation ordinance, not the time of the public hearing. Therefore, petitioners argue, the trial court should have considered the percentage in the third paragraph, which did not satisfy the requirements of N.C. Gen. Stat. § 160A-48(c)(3).

Reviewing the statutory scheme, we agree with the trial court that the date of the public hearing is the latest appropriate cutoff date for determining the subdivision test percentages. As found by the trial court, the legislature has created procedural steps in the annexation scheme which require certainty. The City argues persuasively that if "time of annexation" means time of adoption of the ordinance, then landowners could thwart the annexation process indefinitely by making changes on the day the City Council is scheduled to vote on the adoption of the ordinance. Therefore, we find the trial court did not err in finding that the provisions of N.C. Gen. Stat. § 160A-48(c)(3) were met in paragraph 2 of subsection (2) of the Statement of Statutory Standards.

Affirmed.

Chief Judge ARNOLD and Judge MARTIN concur.